**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CELESTE H. DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 20-cv-2139 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| MERIT SYSTEMS PROTECTION | ) | |
| BOARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Celeste H. Davis, a former federal employee at the Department of Health and Human Services, challenged her removal and termination by filing an appeal in front of Defendant, the Merit Systems Protection Board (the "MSPB"). Before the Administrative Judge assigned to the appeal issued an Initial Decision, the Department challenged the Administrative Judge's appointment on the basis of the Supreme Court's holding in *Lucia v. Securities Exchange Commission*, 138 S. Ct. 2044 (2018). The Chief Administrative Judge dismissed Plaintiff's appeal without prejudice pending the Board's resolution of the *Lucia* question. But the Board lacks a quorum—in fact, it currently has no members—and therefore cannot determine whether the Administrative Judge's appointment was constitutionally valid until at least two Board members are confirmed by the Senate. Understandably frustrated by the delay in adjudicating her appeal, Plaintiff filed a petition for mandamus in this Court, seeking an order that directs the MSPB to issue a decision. The MSPB filed a motion to dismiss [19] for failure to state a claim. Meanwhile, the Court stayed discovery in the case, over Plaintiff's objections, and Plaintiff later filed a motion to vacate the stay [25]. For the reasons set forth below, the motion to dismiss [19] is granted and the motion to vacate the discovery stay [25] is denied. Given the possibility that mandamus relief

may be appropriate at a later time (see discussion below), rather than closing the case, the Court will leave the docket open and direct counsel to file a joint status report advising the Court of any relevant developments on the appointment of members to the MSPB and/or reinstatement or disposition of Plaintiff's appeal no later than April 1, 2021 and every 90 days thereafter until the appeal is decided.

## I.    Background[1]

Plaintiff Celeste H. Davis served as a federal employee for nearly thirty years, most recently as Regional Manager for the Midwest Region, Office of Civil Rights, U.S. Department of Health and Human Services ("DHHS"). She was removed from her position on June 17, 2017. Five days later, Plaintiff appealed her removal by DHHS to Defendant, the Merit Service Protection Board (the "MSPB") [5, at ¶ 2], which is the agency created by statute to implement the due process rights of federal employees not to be removed from employment without a hearing. The Board consists of three members appointed by the President and confirmed by the Senate. [5, at ¶ 3.]   Appeals to the MSPB are considered by administrative judges, who prepare Initial Decisions on the merits of the appeals.   If the Initial Decision finds in favor of the employee, it may include interim relief pending further proceedings. 5 U.S.C. § 7701 (b)(2)(A); 5 C.F.R. § 1201.111 (b)(4) and (c).   If the parties accept the Initial Decision, it becomes final.   If either the employee or the agency objects to the Initial Decision, they may file a Petition for Review, which will be decided by a quorum of two Board members. [5, at ¶ 5.]   The MSPB has lacked a quorum since January 2017, and it currently has no confirmed members.   While it has generally continued to process appeals and issue Initial Decisions, at the end of fiscal year 2019, it had a backlog of

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

more than 2900 Petitions for Review, which cannot not be decided in the absence of a quorum. [5, at ¶ 6.]

After DHHS terminated her employment, Plaintiff filed an appeal, Docket No. CH-0752-17-0423-1-1, with the MSPB, Central Region, on June 22, 2017. In July 2017, MSPB Administrative Judge Georgia Vlahos was assigned to process the appeal. [5, at ¶ 7.] On May 21, 2019, during a telephonic status call, Judge Vlahos told the parties that her forthcoming Initial Decision would find that Plaintiff had proven her affirmative defenses (hostile work environment based on disability, and retaliation for prior protected EEO activity) and that Plaintiff would be entitled to, among other things, reinstatement, back pay, attorney fees, and compensatory damages. Judge Vlahos further said that she would find that DHHS's discrimination and retaliation against Plaintiff were "blatant" and "intentional." [5, at ¶ 8.]

On August 5, 2019, the MSPB record closed regarding compensatory damages. On that same date, DHHS filed a Motion for Reassignment to Properly Appointed Administrative Judge or Dismissal Until a New MSPB Board is Confirmed, relying on *Lucia v. Securities Exchange Commissio*n, 138 S. Ct. 2044 (2018). Plaintiff filed a response to DHHS's motion later that same day. In her response, Plaintiff requested that the MSPB deny DHHS's motion, arguing that, given the age of the appeal and stage of the proceedings—the appeal was fully briefed and ripe for decision—it would be unduly prejudicial for the MSPB to grant DHHS's motion. Plaintiff also requested that she be granted one week to fully brief a response to the motion. [5, at ¶ 9.]

On August 6, 2019, citing 5 C.F.R § 1201.29,[2] MSPB Chief Judge for the Central Region Michele Szary Schroeder issued an Initial Decision that dismissed Plaintiff's appeal without

---

[2] 5 C.F.R § 1201.29 states: "The decision whether to dismiss an appeal without prejudice is committed to the sound discretion of the judge, and may be granted when the interests of fairness, due process, and administrative efficiency outweigh any prejudice to either party."

prejudice to her right to refile once a newly confirmed Board decided an interlocutory appeal, filed April 23, 2019, addressing the *Lucia* issue regarding whether Judge Vlahos has the authority to adjudicate her appeal. Chief Judge Schroeder additionally held that, on February 6, 2020, Plaintiff's appeal would automatically be refiled with the MSPB should a new Board not be seated by that date. [5, at ¶ 10.]

On February 6, 2020, Chief Judge Schroeder dismissed Plaintiff's appeal without prejudice for a second time, stating that the appeal would automatically be refiled with the MSPB on February 6, 2021, should a new Board not be seated by that date. See [3-1, at 28-29.] Plaintiff's appeal was again summarily dismissed without providing her notice of the forthcoming dismissal or an opportunity to respond to MSPB's dismissal. [5, at ¶ 12.] On February 28, 2020, Plaintiff filed with the MSPB Central Region an "Appellant's Motion to Refile Appeal based upon MSPB FY 2019 Annual Report, or Alternatively, to Reconsider Order of February 6, 2020 Dismissing Appeal without Prejudice." Plaintiff requested that the MSPB refile her appeal, asserting that the MSPB's fiscal year 2019 Annual Report showed that the MSPB's Administrative Judges were adjudicating cases on the merits during fiscal year 2019, and were issuing Initial Decisions in appeals on August 6, 2019, the date Plaintiff's appeal was dismissed for the first time. MPSB responded with a letter dated March 2, 2020, notifying Plaintiff that her February 28, 2020 Motion to Refile Appeal had been referred to the MSPB Board in Washington, D.C. as a Petition for Review. [5, at ¶ 13.]

On March 3, 2020, Plaintiff received a "Letter of Intent" from the MSPB Office of the Clerk asking Plaintiff whether her February 28, 2020 Motion to Refile Appeal was a request for a Petition for Review by the MSPB Board. [5, at ¶ 14.] On March 15, 2020, Plaintiff filed with the MSPB's Office of the Clerk a response to its March 3, 2020 Letter of Intent. In her response,

Plaintiff requested that her Motion to Refile Appeal be considered on its merits by the MSPB Central Region. Plaintiff's response also instructed the MSPB's Office of the Clerk to construe her Motion to Refile Appeal as a Petition for Review of Chief Judge Schroeder's February 6, 2020 Initial Decision dismissing her appeal without prejudice for a second time. [5, at ¶ 15.]

On March 23, 2020, Plaintiff received an electronic filing from Chief Judge Schroeder, stating that Plaintiff's March 15, 2020 electronic submission had been treated as correspondence, that Plaintiff's case was closed, and that no further action would be taken on her case. Plaintiff has not received any additional correspondence from the MSPB's Office of the Clerk indicating that her February 28, 2020 Motion to Refile Appeal has been docketed as a Petition for Review of Chief Judge Schroeder's February 6, 2020 Initial Decision dismissing her appeal without prejudice for a second time. [5, at ¶ 16.] Plaintiff states that since August 5, 2019, she has suffered irreparable injury, specifically, that she has been unable to find comparable employment, has depleted her life savings, has been unable to afford health insurance, and is at risk of losing her home. [5, at ¶ 17.] She also asserts that at the time the complaint was filed, not a single MSPB nominee has been confirmed by the Senate.[3] However, the MSPB reported in its fiscal year 2019 Annual Report, dated January 31, 2020, that during fiscal year 2019, MSPB Regional and Field offices decided 2,092 appeals involving Adverse Actions by Agency, that 472 of these appeals involved decisions adjudicated on the merits, and that 123 of the 2,092 appeals involving Adverse Actions were appeals filed against DHHS, the same agency involved in Plaintiff's MSPB appeal. Of the 123 MSPB decisions involving DHHS, 15 of those appeals involved decisions that were adjudicated on the merits by MSPB Administrative Judges. [5, at ¶ 18.]

---

[3] The Court's review of publicly available records suggests that, as of the date of this opinion, the Senate still has not confirmed any pending nominations for MSPB board members.

On April 6, 2020, Plaintiff filed the complaint in this case [1], and on April 17, 2020, she filed a first amended complaint [5]. She argues that the MSPB has deprived her of due process of law and equal protection under the law, both guaranteed by the Fifth Amendment to the U.S. Constitution. She seeks an order of mandamus directing the MSPB to "resume processing [her] appeal and to issue promptly an Initial Decision based on the record as it existed on the day it was closed, August 5, 2019, and including appropriate interim relief," plus attorney's fees and costs. [5, at 7.] On July 31, 2020, the MSPB filed a motion to stay discovery [16], which the Court granted over Plaintiff's objection, reasoning that it should first review the forthcoming motion to dismiss and that any future discovery would not help Plaintiff establish that the complaint she had filed four months earlier stated a claim for mandamus. [21, at 2.] The MSPB filed its motion to dismiss [19] on August 21, 2020, which the parties briefed. Plaintiff then filed a motion to vacate the discovery stay [25], which the parties also briefed. The motion to dismiss [19] and motion to vacate the discovery stay [25] are now before the Court.

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a

'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *Ashcroft,* 129 S.Ct. at 1950)). Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1950).

## III.    Analysis

Mandamus relief will be granted if the plaintiff can demonstrate that three conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002). Plaintiff's complaint seeks an order of mandamus compelling three specific acts. She wants the Court to order the MSPB to "resume processing Plaintiff's appeal," to "issue promptly an Initial Decision," and to include in that Initial Decision "appropriate interim relief." [5, at 7.] Before resolving whether Plaintiff's complaint sets out a claim for mandamus, two issues require explication: the exact relief Plaintiff seeks, and the legal framework under which the MSPB operates.

First, Plaintiff requests an order directing the MSPB to "resume processing Plaintiff's appeal." [5, at 7.] Elsewhere in the Complaint, she describes the requested relief as "reinstat[ing] her pending appeal of her Removal," which is more accurate. [5, at 1.] The Chief Administrative Judge for the Central Region dismissed Plaintiff's appeal without prejudice and ordered that it be refiled on February 6, 2021, if a new Board has not been seated by then. Because the appeal is already slated to be reinstated, Plaintiff is really asking the Court to order the MSPB to reinstate Plaintiff's appeal before February 6, 2021.

Second, Plaintiff seeks an order directing the MSPB to "issue promptly an Initial Decision based on the record as it existed on the day it was closed, August 5, 2019." [5, at 7.] Taking the allegations in the complaint as true, the record did close on August 5, 2019, but that is not necessarily the end of the story. 5 C.F.R. § 1201.59 provides that additional evidence or argument are not ordinarily accepted after the record closes, but there are exceptions. The MSPB could accept additional evidence or argument in two circumstances: "(1) the party submitting it shows that the evidence or argument was not readily available before the record closed; or (2) it is in rebuttal to new evidence or argument submitted by the other party just before the record closed." There is no indication in the parties' filings that either of these circumstances applies, but it is not this Court's place to say that they do or do not apply (or will or will not apply in the future), nor is it this Court's place to foreclose the MSPB or its Administrative Judges from making that determination. Because it may be possible to submit additional evidence or argument after the close of the record, the "on the record as it existed…on August 5, 2019" portion of Plaintiff's request is a nonstarter. But rather than deny that portion of relief based on the inclusion of one unfortunate phrase, which would elevate form over substance, the Court will instead address the core of Plaintiff's request for an order directing the MSPB to "issue promptly an Initial Decision."

The Court construes Plaintiff's request as seeking an order directing the MSPB to reinstate her appeal of her removal before February 6, 2021 and to issue promptly an Initial Decision that includes interim relief.

Next, the Court turns to the legal framework under which the MSPB operates. The statutes and regulations are complex, so the Court focuses only on the sections relevant to the matters at hand. "The Civil Service Reform Act of 1978 ('CSRA'), 5 U.S.C. § 1101 *et seq.*, establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). If the action is "particularly serious—involving, for example, a removal from employment or a reduction in grade or pay—the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes." *Id.* (citing 5 U.S.C. §§ 1204, 7512, 7701). The MSPB is composed of three members appointed by the President and confirmed by the Senate, each serving a seven-year term. 5 U.S.C. §§ 1201, 1202. Since February 2019, the MSPB has had no sitting members, but administrative judges, under their delegated authority, have continued to issue initial decisions in MSPB appeals. 5 U.SC. § 7701(b)(1); see also 5 C.F.R. 1201.111(a).

Appeals to the MSPB "may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute," such as the Rehabilitation Act of 1973, 29 U.S.C § 791 *et seq. Kloeckner*, 568 U.S. at 44; 5 U.S.C. § 7702(a)(1)(B)(iii). The latter type of case is known as a "mixed case appeal." 29 CFR § 1614.302(a)(2). This type of appeal is analyzed under a different review framework than appeals that do not contain allegations of unlawful discrimination. See 5 U.S.C. § 7702. For mixed case appeals, the CSRA directs the Board to decide "both the issue of discrimination and the appealable action" within 120 days of the filing

of the appeal. *Id.* § 7702(a)(1). The Board has delegated this responsibility to an Administrative Judge, who issues an initial decision after receiving written briefs from the parties and after the opportunity for a hearing. *Id.* § 7701(b)(1); see also 5 C.F.R. 1201.111(a).

Administrative Judges have some discretion in the process of adjudicating an appeal. For example, an Administrative Judge may dismiss an appeal without prejudice "on the judge's own motion or upon request by either party," and the decision whether to dismiss without prejudice is "committed to the sound discretion of the judge, and may be granted when the interests of fairness, due process, and administrative efficiency outweigh any prejudice to either party." 5 C.F.R. § 1201.29(b).

An initial decision, or a dismissal without prejudice, is final unless a party appeals the decision to the Board for review within 35 days or the Board reopens and reconsiders a case *sua sponte*. 5 U.S.C. § 7701(e)(1); 5 C.F.R. § 1201.113. After the Board issues a decision in a mixed-case appeal, the employee has the opportunity to file a petition for review with the EEOC. 5 U.S.C. § 7702(a)(1)-(3). If the employee chooses not to file a petition with the EEOC, the Board's decision becomes a "judicially reviewable action" as of the date the decision is issued. *Id.* § 7702(a)(3)(A). The employee then has 30 days to file a case in district court subject to the provisions of the applicable civil rights law (here, the Rehabilitation Act). See *id.* § 7703(b)(2). But if the employee decides to waive the discrimination issue, the employee may pursue judicial review of the MSPB's decision before the Federal Circuit. 5 C.F.R. § 1201.157.

But appellants may not always get a decision in a timely manner, and the CSRA provides an alternative route to resolving their claims through its languishing provision. If the Board has not taken a "judicially reviewable action" within 120 days of the filing of a mixed-case appeal, an employee may file a case in district court asking that court to resolve her underlying discrimination

10

claims *de novo*, just as the employee would if the Board in fact had issued a decision. 5 U.S.C. § 7702(e)(1)(B); 29 U.S.C. § 794a(a); see also *Butler v. West*, 164 F.3d 634, 643 (D.C. Cir. 1999). This provision would apply both if the appeal remains pending past 120 days before the Administrative Judge and if the appeal is pending on administrative petition for review before the full Board.

A 2018 Supreme Court ruling, *Lucia v. SEC*, has cast portions of this administrative scheme into doubt. 138 S. Ct. 2044. In *Lucia*, the Supreme Court held that Administrative Law Judges employed by the Securities and Exchange Commission are inferior officers of the United States who must be appointed by the full Commission under the Appointments Clause of the U.S. Constitution. *Id*. at 2049. At the time of the administrative enforcement action that prompted the challenge in *Lucia*, the SEC's Administrative Law Judges had *not* been appointed in that way. As a result, the Supreme Court held that their appointments violated the Appointments Clause, and the SEC was required, in order to avoid constitutional violations, to provide new hearings with validly appointed officials in proceedings in which Appointments Clause challenges had been timely raised. *Id.*

The *Lucia* decision caused other federal agencies, and parties to proceedings in front of those agencies, to examine whether other Administrative Law Judges and officials performing similar adjudicative functions were properly appointed. An interlocutory appeal raising the *Lucia* issue has been before the MSPB since April 23, 2019. See [5, at ¶ 10.] But because the Board has no members, it cannot determine whether its Administrative Judges are inferior officers, as the SEC's Administrative Law Judges are.

11

Having laid out what exactly Plaintiff wants and the legal framework that applies to the MSPB's consideration of her appeal, the Court now turns to whether Plaintiff's complaint sets forth a claim for mandamus.

### A. Adequate Alternative Remedy

Mandamus relief is not available if the plaintiff has an adequate legal remedy. *Marbury v. Madison*, 5 U.S. 137, 169 (1803) ("to render the mandamus a proper remedy * * * the person applying for it must be without any other specific and legal remedy"); *Iddir v. I.N.S.,* 301 F.3d 492, 498 (7th Cir. 2002). Defendant argues that Plaintiff has an adequate alternative remedy, namely, an employment discrimination suit in federal district court. See [19, at 7]. According to the MSPB, she could use the CSRA's languishing provision, 5 U.S.C. § 7702(e)(1)(B), to file a discrimination suit in federal court (in which the district court would conduct *de novo* proceedings on her discrimination claims), because her appeal to the MSPB has been pending for more than 120 days without a final decision by the MSPB.

Plaintiff responds that she has already "won her claim" in front of the Administrative Judge and that a "lengthy complex federal employment discrimination lawsuit is no adequate substitute for the administrative process that Congress has directed" for claims like hers. [22, at 13.] First, Plaintiff has not yet proven or won anything, since she has no decision on the merits from the Administrative Judge (or the MSBP). Second, the right Plaintiff seeks to vindicate is—according to her own filing—a right "pursuant to the due process clause of the Fifth Amendment and the Civil Service Reform Act…to a post-termination hearing at a reasonable time concerning the validity of her removal." [22, at 4.] Federal district courts are perfectly capable of vindicating that right. Congress agrees: the CSRA specifically allows federal employees in Plaintiff's position to take their discrimination claims to district courts, see 5 U.S.C. § 7702(e)(1)(B), and it is difficult

to believe Congress would have enacted that provision if it believed district courts were not an adequate forum for adjudicating those claims. In fact, the Supreme Court has observed that the CSRA's languishing provision was implemented for the very purpose of protecting federal employees from suffering "perpetual uncertainty by Board inaction," the root of Plaintiff's complaint here. *Kloeckner*, 568 U.S. at 54. While the Court understands Plaintiff's desire to avoid beginning a case in federal court now, especially after previously reaching the cusp of a decision from an Administrative Judge, that does not mean that a federal discrimination lawsuit is not an adequate alternative remedy for her. Rather, a discrimination lawsuit is the exact alternative remedy that Congress prescribed for this type of situation.

The case Plaintiff cites on this issue, *Butler v. West*, 164 F.3d 634 (D.C. Cir. 1999), is not binding on this Court but does reinforce the Court's conclusion. *Butler* notes that § 7702(e)(1)(B) allows plaintiffs to pursue discrimination claims federal district court if the agency fails to render a judicially reviewable decision within 120 days from the filing of the appeal. *Id.* at 639. It also points out that several other subsections direct plaintiffs to federal district court in the event of administrative delay, and says that these subsections "clearly express Congress' desire that mixed cases should be processed expeditiously, *and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery.*" *Id.* at 640 (emphasis added). Rather than supporting Plaintiff's position, *Butler* underscores that Congress intentionally directs employees with mixed case appeals to federal district courts as an alternative forum for pursuing discrimination claims in the event of administrative delay. The remainder of the *Butler* opinion focuses on judicial review of final MSPB decisions, which *was* an issue in that case, but is not an issue here. So Plaintiff is right that *Butler*'s discussion of judicial review of agency decisions "makes no sense in this case," [22, at 14], but that does nothing to undermine her

13

option to bring a discrimination case in district court under § 7702(e)(1)(B) or the adequacy of that alternative remedy.  Plaintiff's ability to file a discrimination suit in federal district court is an adequate remedy other than mandamus, which alone is enough to prevent her from stating a claim for mandamus. *Iddir*, 301 F.3d at 498.

### B.    Clear Duty

The Court next turns to with the question whether the MSPB has a duty to reinstate Plaintiff's appeal before February 6, 2021, and to promptly issue an Initial Decision including interim relief.  Mandamus is an "extraordinary remedy," that requires, among other things, "a plainly defined and peremptory duty on the part of the defendant to do the act in question." *Scalise v. Thornburgh,* 891 F.2d 640, 648 (7th Cir. 1989).  The writ "is intended to provide a remedy for a plaintiff * * * only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984); see also *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). "[M]andamus jurisdiction does not lie to direct the exercise of administrative discretion within its lawful boundaries." *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978); see also *Flynn v. Shultz*, 748 F.2d 1186, 1194 (7th Cir. 1984).  In determining whether a statute imposes such a mandatory obligation, the Court must determine the "congressional intent," considering "the language of the statute; the legislative history; and the interpretation given by the administrative agency charged with enforcing the statute." *Scalise*, 891 F.2d at 644.

Neither Plaintiff's citations, nor the Court's review of the statutes and regulations, identified any duty on MSPB's part to reinstate Plaintiff's appeal and issue a decision on Plaintiff's chosen timeframe, much less a decision that includes interim relief.  Rather, the administrative dismissal and order that the appeal be refiled on February 6, 2021, appear to be exercises of the discretion given to the MSPB by the CSRA and delegated to Administrative Judges by applicable

14

regulations.  The CSRA charges the MSPB with deciding removal appeals, including mixed case appeals. 5 U.S.C. § 7702(a)(1).  The Board has delegated this responsibility to an Administrative Judge, who issues an initial decision after receiving written briefs from the parties and after the opportunity for a hearing. *Id*. § 7701(b)(1); see also 5 C.F.R. 1201.111(a).  An Administrative Judge may also dismiss an appeal without prejudice "on the judge's own motion or upon request by either party." 5 C.F.R. § 1201.29(b). "The decision whether to dismiss an appeal without prejudice is committed to the sound discretion of the judge, and may be granted when the interests of fairness, due process, and administrative efficiency outweigh any prejudice to either party." *Id*. Because the Administrative Judge has discretion to dismiss cases without prejudice, in the way it has dismissed Plaintiff's case, and because Plaintiff cites no law commanding the MSPB to reinstate and decide cases on the timeframe Plaintiff requests, much less decide them in any given way, Plaintiff's complaint fails to show that the MSPB has a clear duty to perform the acts the complaint requests.

Plaintiff argues that the MSPB has a clear duty to adjudicate her appeal, pointing to language in the CSRA stating that the MSPB "shall hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board" and "take final action on any such matter" 5 U.S.C. § 1204, and that the applicable regulations provide that the administrative judge "will prepare an initial decision after the record closes and will serve that decision on all parties to the appeal. " 5 C.F.R. § 1201.111. See *Iddir*, 301 F.3d at 499–500 ("The term 'shall' denotes a clear directive, a command, as opposed to the terms 'may' or 'in his discretion'").  That may be right, but the MSPB's duty to adjudicate comes with at least some discretion in how and when it adjudicates appeals, as evidenced by the Administrative Judges' discretion to administratively dismiss appeals without prejudice. 5 C.F.R. § 1201.29; see also *Ball v. Merit Sys. Prot. Bd.*, 102

F. App'x 696, 698 (Fed. Cir. 2004) (MSPB has discretion to dismiss appeals for failure to prosecute); *Gussie v. U.S. Postal Serv.*, No. NY-0351-94-0536-R-1, 1996 WL 110167 (M.S.P.B. Mar. 4, 1996) (MSPB has discretion to reopen a final decision under certain circumstances pursuant to 5 U.S.C. § 7701(e) and 5 C.F.R. § 1201.117); *Schmidt v. U.S. Postal Serv.*, No. DE07528810138, 1988 WL 134032 (M.S.P.B. Nov. 30, 1988) ("The determination as to when to close the record in an appeal is within the discretion of the administrative judge.") (citing 5 C.F.R. § 1201.58). The MSPB's broad duty to adjudicate appeals, in light of its significant discretion in setting and executing the process of adjudicating appeals, does not create a duty to perform the act in question—to immediately reinstate Plaintiff's appeal and issue an Initial Decision in her favor.

Furthermore, even if the MSPB had a duty to reinstate the appeal and issue an Initial Decision before February 6, 2021, it certainly does not have a clear duty to provide interim relief. An appellant is entitled to such relief only "*if* the appellant is the prevailing party." 5 C.F.R. § 1201.111 (emphasis added). Whether Plaintiff should prevail on her appeal is question for the MSPB or the Administrative Judge, not this Court, and because it is an open question, Plaintiff's right to receive—and the MSPB's corresponding duty to order—interim relief is not yet "clear."

### C.    Clear Right

The remaining question is whether Plaintiff has a clear right to reinstatement of her appeal and a "prompt" issuance of an Initial Decision, including interim relief in her favor. See *Iddir*, 301 F.3d at 499. "To determine what right is owed to the plaintiff, we look to the statute enacted by Congress," in this case, the Civil Service Reform Act. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (citation omitted). The CSRA establishes a framework for evaluating personnel actions taken against federal employees and provides that employees facing a removal action, like Plaintiff, have the right to appeal the agency's decision to the MSPB. *Kloeckner*, 568

U.S. at 44, citing 5 U.S.C. §§ 1204, 7512, 7701. But Plaintiff cites no portion of the statute establishing that Plaintiff has a right to reinstatement of an appeal dismissed without prejudice, nor did the Court find any such right in its review of the CSRA. The same is true for Plaintiff's request for interim relief. As discussed above, an Administrative Judge or the MSPB may ultimately determine she is entitled to it, but because that is currently an open question, Plaintiff does not have a "clear right" to interim relief.

**1.      Due Process**

Plaintiff argues that she has a right "pursuant to the due process clause of the Fifth Amendment and the Civil Service Reform Act…to a post-termination hearing at a reasonable time concerning the validity of her removal." [22, at 4.] Plaintiff does have a right to adjudication of her removal appeal. The CSRA says that the MSPB "shall hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board" and "take final action on any such matter" 5 U.S.C. § 1204, and the applicable regulations provide that the administrative judge "will prepare an initial decision after the record closes and will serve that decision on all parties to the appeal." 5 C.F.R. § 1201.111. See *Iddir*, 301 F.3d at 499–500 ("The term 'shall' denotes a clear directive, a command, as opposed to the terms 'may' or 'in his discretion'"). She claims the MSPB's delay in adjudicating her appeal is great enough to violate her due process rights [22, at 5-6] and urges the Court to use a D.C. Circuit test for analyzing whether an agency's delay is reasonable. [22, at 6], citing *Telecommunications Research and Action Center v. EC.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ("*TRAC*"). But the Seventh Circuit has not adopted the six-

factor test from *TRAC*[4] so this Court instead turns to applicable precedent from the Supreme Court and Seventh Circuit.

At some point, an unjustified delay in completing a post-deprivation proceeding "would become a constitutional violation," *Cleveland Bd. of Education v. Loudermill*, 470 U.S., at 547, but "the significance of such a delay cannot be evaluated in a vacuum." *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242, (1988). In determining how long a delay is justified in affording a post-termination hearing and decision, "it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005) (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)).

Plaintiff has a significant interest in her job and its accompanying benefits. See, *e.g.*, *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005) (child care workers have an interest in quickly returning to work); *DeVito v. Chicago Park Dist.*, 972 F.2d 851, 855 (7th Cir. 1992) (plaintiff's interest in continued employment is a "very important interest"). Also on Plaintiff's side is the third factor. The Administrative Judge told the parties at a status hearing that the Initial Decision she planned to issue would find for the Plaintiff, which is good evidence that the decision to terminate Plaintiff may have been mistaken.

On the other hand, the MSPB, like any unit of the federal government, has a strong interest in complying with Constitutional obligations. See, *e.g.*, *Locke v. Davey*, 540 U.S. 712, 722-24 (2004) (recognizing governmental interest in not establishing a religion); *Widmar v. Vincent*, 454

---

[4] The Court is aware that a recent concurring opinion in the Seventh Circuit has referred to *TRAC* approvingly. See *Menominee Indian Tribe of Wisconsin v. Envtl. Prot. Agency*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring), reh'g denied (May 8, 2020).

U.S. 263, 271 (1981) (recognizing a state actor's interest in "complying with its constitutional obligations"). DHHS has raised a serious question about the MSPB's ability to do that, given *Lucia* and the way the MSPB's Administrative Judges have been appointed, and the MSPB must consider and resolve that question—which it cannot do right now, because it lacks a quorum (or any members). Furthermore, it is not as if the MSPB is intentionally delaying the resolution of the *Lucia* challenge, or the appointment and confirmation of a quorum of board members; the Board is waiting for Senate confirmation of at least two nominees from the President. Plaintiff's wait— which, at this point, has been a little over a year since her appeal was first administratively dismissed without prejudice—may be aggravating, but in context and considering that the root cause is beyond the MSPB's control, it is not so unreasonably long as to be a constitutional violation. See *Calderon-Ramirez*, 877 F.3d at 275–76 (18-month delay in processing U-visa application was not unreasonable delay justifying mandamus); *DeVito v. Chicago Park Dist.*, 972 F.2d 851, 858 (7th Cir. 1992) (affirming district court ruling that one-year delay of post-termination hearing was not unreasonable or unconstitutional). To be sure, an extreme and unexplained delay in adjudication resulting in extreme prejudice to a litigant can result in the issuance of a valid writ of mandamus. See *Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir. 1980) (Railroad Retirement Board violated applicant's due process rights by taking nearly four years to issue a final denial of application and by not supplying any valid reason for the delay); cf. *In re Blodgett*, 502 U.S. 236, 240-41 (1992) (declining to issue writ of mandamus to order Ninth Circuit to decide appeal despite two-and-a-half year stay of execution, but noting that denial was "without prejudice to the right of the State to again seek mandamus relief or to request any other extraordinary relief by motion or petition if unnecessary delays or unwarranted stays occur in the panel's disposition of the matter"). But that point has not been reached—at least not yet.

And before mandamus would be available, the parties and the Court also would need to revisit some open issues regarding the potential availability of relief in a separate federal lawsuit (see discussion above).[5]

### 2. Equal Protection

Plaintiff also argues that she has a clear right to equal protection of the law[6], which the MSPB has violated by adjudicating some appeals, including some arising from DHHS actions, but not issuing an Initial Decision in hers. Equal protection claims arise when a state actor "treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right,' or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). However, the complaint makes no allegations about poor treatment based on a suspect class or exercising a fundamental right or group membership, and both parties' briefs frame Plaintiff's argument as a "class-of-one" theory.

In limited circumstances, the Supreme Court has recognized so-called "class-of-one" equal protection claims, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

---

[5] The current briefing does not thoroughly explore any potential limitations on Plaintiff's opportunity to pursue relief in court at a later date – for example, any time limits that may come into play. If Plaintiff continues to have an avenue for obtaining relief in a separate federal action, even a long delay in her appeal at the MSPB may not suffice to compel relief through mandamus if she cannot also satisfy the "no adequate alternative remedy" prong. For the moment, the Court expresses no further views on this issue, but simply flags it for the parties' future consideration.

[6] "Unlike the Fourteenth Amendment, the Fifth Amendment does not contain an Equal Protection Clause. However, the Fifth Amendment's Due Process Clause does contain an equal protection component applicable to the federal government. * * * The scope of the equal protection guarantee under the Fifth Amendment is essentially the same as under the Fourteenth Amendment." *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir. 2000).

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium). Class-of-one claims generally only arise when, "with no conceivable basis for his action other than spite or some other improper motive[,] * * * [a public official] comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). Though a plaintiff is not always required to identify a comparator at the pleadings stage, to prevail, a "class–of–one plaintiff" must "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015). "It is not enough for a complaint to suggest an improper motive." *Id*. All that is required to defeat a class of one claim "is a conceivable rational basis for the difference in treatment." *Id*.

Plaintiff here fails both requirements. The complaint does not allege that the MSPB has intentionally treated her differently than similarly situated individuals. The closest it comes is alleging that the MSPB has adjudicated some other appeals on the merits since her was administratively dismissed. [5, at ¶ 18.] But the complaint does not assert that the MSPB *intentionally* treated Plaintiff in particular differently than other appellants, or that they were similarly situated, only that the MSPB resolved other appeals, including some on the merits, but not Plaintiff's appeal. The MSPB's explanation for administratively dismissing Plaintiff's appeal without prejudice, rather than ruling on it, is that her case has a pending *Lucia* challenge, which a quorum of the Board must resolve, and because the Board currently lacks a quorum, it cannot yet resolve the *Lucia* issue. [19, at 17-18.] That is a rational basis for treating Plaintiff's appeal differently from appeals that do not have a pending *Lucia* challenge, which is enough to defeat Plaintiff's "class of one" equal protection theory. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013).

In sum, because the first amended complaint fails to satisfactorily state any of the three requirements for mandamus, the Court dismisses it.

### D. Motion to Vacate Discovery Stay

Plaintiff also asked the Court to vacate its order staying discovery. The request seems moot, since the Court is dismissing the first amended complaint, but there is an additional reason to deny the motion to vacate the stay. Plaintiff's motion to vacate argues that the stay should be lifted because the information Plaintiff seeks is "relevan[t] to the disposition of the motion to dismiss." [25, at 3.] Under *Twombly*, it is clear that a substantive complaint that sufficiently states a claim must come first, and discovery comes second. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 802–03 (7th Cir. 2008) (under *Twombly*, defendants should not be forced to undergo discovery unless the complaint contains enough detail to indicate that the plaintiff has a substantial case); see also *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("Bissessur's argument that the exact details of the contract will become clear during discovery runs counter to the holding of *Twombly*, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence."). While this case is clearly *not* the stereotypical "fishing expedition" that courts worry will lead to discovery abuses, that does not mean that Plaintiff may file a complaint that fails to state a claim and then get discovery that she says will allow the complaint to pass muster. Because Plaintiff must state a viable claim before she may take discovery, but she has not done so, her motion to vacate the discovery stay is denied. See, *e.g., Patel v. Mahajan*, 2012 WL 3234397, at *5 (N.D. Ill. Aug. 6, 2012) (calling "meritless" the plaintiffs' argument that they were entitled to discovery before their claims were dismissed).

### IV. Conclusion

For the reasons set forth below, the motion to dismiss [19] is granted and the motion to vacate the discovery stay [25] is denied. Given the possibility that mandamus relief may be appropriate at a later time (see discussion below), rather than closing the case, the Court will leave the docket open and direct counsel to file a joint status report advising the Court of any relevant developments on the appointment of members to the MSPB and/or reinstatement or disposition of Plaintiff's appeal no later than April 1, 2021 and every 90 days thereafter until the appeal is decided.

Dated: November 9, 2020

Robert M. Dow, Jr.
United States District Judge